1  GREENBERG TRAURIG, LLP
2   Diana P. Scott (SBN 084875)
    Matthew B. Hayes (SBN 220639)
3  2450 Colorado Avenue, Suite 400E
   Santa Monica, California 90404
4  Telephone: (310) 586-7700
   Facsimile: (310) 586-7800
5  ScottDP@gtlaw.com; HayesM@gtlaw.com

6   Francine F. Griesing (admitted *pro hac vice*)
7   Brian T. Feeney (admitted *pro hac vice*)
   2700 Two Commerce Square
8  2001 Market Street
   Philadelphia, PA 19103
9  Telephone: (215) 988-7800
10 Facsimile: (215) 717-5265

11 Attorneys for Defendant and Counter-Claimant
   Brock Pierce
12

13                    UNITED STATES DISTRICT COURT
14
                      CENTRAL DISTRICT OF CALIFORNIA
15

16 ALAN DEBONNEVILLE,                  CASE NO.: CV07-3776 R (MANx).
17
                Plaintiff,             [Assigned to the Honorable Manuel L.
18                                     Real, Room 218]
   v.
19
   BROCK PIERCE,                       **OPPOSITION TO PLAINTIFF ALAN
20                                     DEBONNEVILLE'S EX PARTE
                Defendant.             MOTION FOR SANCTIONS;
21                                     DECLARATION OF MATTHEW B.
                                       HAYES, ESQ.**
22
   BROCK PIERCE,
23
                Counter-Claimant,
24
   v.
25
   ALAN DEBONNEVILLE and
26 ROES 1 through 10, inclusive
27
                Counter-Defendant.
28

# I.

## INTRODUCTION

Plaintiff Alan Debonneville ("Debonneville") and his counsel have interpreted this Court's April 25, 2008 Orders granting all of their ex parte applications for various forms of relief against Defendant Brock Pierce ("Pierce") as license from this Court to begin taking actions against Pierce and his counsel with no regard for the Constitution, the Federal Rules of Civil Procedure, the Local Rules, or this Court's own orders. Debonneville's counsel has taken the position that any relief it requests from this Court henceforth, no matter how unreasonable, overreaching or improper, will simply be rubber-stamped. In a telephone call on April 29, 2008, regarding the upcoming May 5th hearing for a preliminary injunction, Debonneville's counsel expressly conceded as much and taunted "good luck arguing before Judge Real." The following afternoon, Debonneville filed the Ex Parte Motion at issue here, seeking $25,000 in sanctions against Pierce and his counsel upon less than three Court days notice. The motion is so patently defective, both procedurally and substantively, as to serve no purpose other than to unreasonably burden, harass and intimidate Pierce and his counsel as they attempt to prepare for the May 5th hearing.

Debonneville's purported basis for requesting sanctions is his assertion that Pierce improperly failed to appear for deposition on April 28, 2008. However, none of the Orders issued by this Court on April 25th, which were all drafted by Debonneville's counsel, require Pierce to submit to deposition. Nor is there any outstanding deposition notice that could conceivably have required Pierce's attendance at deposition.

Debonneville attempts to rely on a deposition notice served by him on April 14, 2008. But that notice was served in knowing violation of both the March 11, 2008 Memorandum of Settlement (whereby Debonneville agreed to release Pierce from all claims and cease prosecuting the underlying litigation) and this Court's January 16, 2008 scheduling Order (which expressly forbade both parties from conducting any depositions after April 7, 2008). Moreover, that notice became unquestionably defunct on April 17,

1

2008 when the parties agreed upon and executed the final written settlement agreement mutually releasing one another from all claims as of that date. Debonneville never renoticed Pierce's deposition thereafter and at no point has he attempted to repudiate either the Memorandum of Settlement or the final written settlement. To the contrary, he has ratified both and sought their specific enforcement.

For these reasons and numerous others, which are all set forth below, Debonneville's motion for sanctions should be summarily denied and Debonneville and his counsel should be ordered to reimburse Pierce for the costs and fees he was forced to incur in opposing this frivolous request.

## II.

## FACTUAL BACKGROUND

### A. This Court Issues A Scheduling Order Requiring The Parties To Submit To A Mandatory Settlement Conference And To Complete All Depositions By April 7, 2008.

On January 16, 2008, pursuant to a stipulation between the parties, this Court issued an order referring the case "to Magistrate Judge Nagle for a mandatory settlement conference to be set by Judge Nagle as her calendar permits." That order further provided that "[i]f the case has not settled after the mandatory settlement conference, the Parties **will complete the depositions of the parties** and any third party discovery and depositions **by April 7, 2008**." *See* Exhibit 1 (Hereafter, "Scheduling Order").

Following the issuance of the Scheduling Order, the parties arranged to participate in a mandatory settlement conference before Judge Nagle in early March 2008. In advance of the mandatory settlement conference, each party noticed the others deposition to occur in the week following completion of the mandatory settlement conference. In this regard, on February 22, 2008, Pierce served Debonneville with notice that he must appear for deposition on March 17, 2008. *See* Exhibit 2.

/ / /

/ / /

2

**B.    The Parties Agree To Settle At The Mandatory Settlement Conference, And, In Light Thereof, Debonneville Does Not Appear For His Deposition Noticed For March 17, 2008.**

On March 10 and 11, 2008, the parties participated in a mandatory settlement conference before Judge Nagle.  At the conclusion of that conference, the parties agreed to enter into a binding agreement to settle the lawsuit and to mutually dismiss one another from any and all claims, known and unknown, existing as of March 11, 2008. The parties executed a confidential "Memorandum of Settlement" on March 11, 2008 memorializing the parties' agreement to settle the lawsuit and outlining terms of the settlement.   The Memorandum of Settlement explicitly contemplated that the parties would "prepare a more complete written Settlement Agreement and Release."  It further provided that "Any disputed in reaching a more complete written Settlement Agreement will be submitted to Judge Nagle for arbitration and resolution."  However, "[i]n the event that the parties [were] unable to agree upon the language and terms of said Settlement Agreement and Release" the agreement provided that "the terms of this Memorandum of Settlement shall be binding and enforceable . . . ."

Following execution of the Memorandum of Settlement, Debonneville did not appear for his deposition noticed for March 17, 2008.  He did not file a motion to quash that deposition nor a motion for protective order to excuse his attendance at that deposition.  This is no doubt because he understood that, in light of the parties execution of the Memorandum of Settlement whereby they agreed to settle the lawsuit and release each other from any and all claims, the underlying litigation would not be proceeding. To continue with the underlying litigation, it would be necessary to repudiate the Memorandum of Settlement, which neither party has ever sought to do.

/ / /

/ / /

/ / /

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO SHORTEN NOTICE OF MOTION FOR SANCTIONS

**C.** **After Discussions To Commemorate The Memorandum Of Settlement In A Formal Written Settlement Agreement Bog Dow, Debonneville's Counsel Begins Threatening To Resume Litigation.**

Following the Mandatory Settlement Conference, the parties began working to prepare a final written settlement agreement as contemplated by the Memorandum of Settlement.  As reflected in the e-mails between Pierce's counsel and Debonneville's counsel attached hereto, there were numerous drafts of the final settlement agreement circulated between the parties and extensive discussions between the parties about proposed terms in the final written settlement agreement.  On April 10th, 2008, Debonneville's counsel began threatening to resume litigation, and to disclose the confidential terms of the Memorandum of Settlement, if the final terms of a written settlement agreement were not immediately reached. *See* Exhibit 3.

In the midst of making these threats, however, Debonneville's counsel also applied to Judge Nagle on April 11, 2008, pursuant to the Memorandum of Settlement, asking her to "arbitrate and resolve the irreconcilable disputes that exist between Debonneville and Pierce in reaching a more complete Settlement Agreement." *See* Exhibit 4.  Pursuant to that request, Judge Nagle asked the parties reappear before her in the last week of April or early May to resolve the remaining disputes.

Pierce's counsel informed the Court and Debonneville's counsel of the dates it was available for such a conference with Judge Nagle.  In doing so, Pierce's counsel objected to Debonneville's counsel's threats to resume the litigation "given the existence of a binding agreement to settle" which both parties had acknowledged.  Pierce's counsel made clear it would be happy to "discuss [Debonneville's] demand to resume litigation in the above matter -- including [Debonneville's] request to immediately depose Mr. Pierce and [his] request for leave to amend the complaint -- at the further conference with Judge Nagle." *See* Exhibit 5.

Debonneville and his counsel were also aware that, if they wished to resume the underlying litigation, Debonneville would have to seek leave of Court in light of the January 16, 2008 Scheduling Order which expressly required that all depositions be

4

completed by April 7, 2008.  This is evidenced by an April 13, 2008 e-mail from Debonneville's counsel discussing the need to file a "Motion for Leave to Amend Scheduling Order" so that he could resume litigation. *See* Exhibit 6.  No such motion was ever filed.

**D.   In Knowing Violation Of This Court's Scheduling Order And The Memorandum Of Settlement, Debonneville Notices Pierce's Deposition And Serves A Proposed Second Amended Complaint In The Underlying Litigation.**

In direct violation of this Court's Scheduling Order, on April 14, 2008 Debonneville's counsel proceeded to simply serve a notice of deposition on Pierce, demanding that he appear for deposition on April 28, 2008. Debonneville also served a proposed Second Amended Complaint on Pierce. *See* Exhibit 7.  The attempt to notice Pierce's deposition violated this Court's Scheduling Order, which required all depositions to be "complete[d] . . . by April 7, 2008."  The attempt to notice the deposition and resume litigation was also in contravention of the Memorandum of Settlement executed by Debonneville, whereby he agreed to release all claims against Pierce in the underlying litigation.  Debonneville never sought to repudiate the Memorandum of Settlement.  To the contrary, as noted above, he specifically sought to enforce it before Judge Nagle at the same time he was improperly seeking to continue the underlying litigation.[1]

**E.   The Parties Subsequently Agree Upon And Enter Into A Final Written Settlement Agreement Mutually Releasing One Another From Any And All Claims As Of April 17, 2008.**

The day after Debonneville's counsel noticed Pierce's deposition and served a Second Amended Complaint, Debonneville's counsel circulated an e-mail entitled "Final

---

[1]   When Debonneville's counsel sought to resume the litigation and cease further discussions about reaching a final settlement agreement, all constructive communications between the parties collapsed.  Debonneville's counsel resorted to accusing Pierce's counsel of lying, going back on their word and malpractice.  This eventually constrained Pierce's counsel to request that "further communications be placed in writing" to avoid any further disputes between counsel about representations allegedly made in telephone calls.  Debonneville's counsel refused to agree to this request, dismissing it as "posturing."  *See* Exhibit 8.

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO SHORTEN NOTICE OF MOTION FOR SANCTIONS

Offer."   Attached to this e-mail was a proposed revised draft of the final settlement agreement.  The e-mail from Debonneville's counsel indicated that he was assuming a " 'take it or leave it' position."  *See* Exhibit 9.  Pierce's counsel immediately responded to the offer and made clear they would devote all their resources "to try to hammer the remaining issues out" so that a final written settlement agreement could be reached.  *See* Exhibit 10.  On April 17, 2008, the parties finally reached agreement on terms of the final written settlement agreement.

Both Debonneville and Pierce executed the "Confidential Settlement Agreement And Mutual Release" (hereafter "Final Settlement Agreement") on April 17, 2008.  *See* Exhibit 11.  Pursuant to the Final Settlement Agreement the parties agreed to mutually release one another from any and all known and unknown claims existing as of April 17, 2008, including all claims at issue in the underlying litigation.

**F.   Debonneville Never Renotices Pierce's Deposition Following Execution Of The Final Settlement Agreement And Never Files The Threatened Second Amended Complaint.**

Following execution of the Final Settlement Agreement, Pierce's counsel never renoticed Pierce's deposition and did not indicate that the improper deposition notice served on April 14, 2008 was somehow still effective despite the execution of the Final Settlement Agreement.  Just as Debonneville had understood that he would not need to appear for his deposition on March 17th in light of the parties reaching an agreement to settle on March 11th, Pierce had no reason to believe that he would need to appear for his deposition on April 28, 2008 in light of the parties' execution of the Final Settlement Agreement on April 17, 2008.  There was no need for the filing of a motion to quash or motion for protective order because it was clear that the improperly noticed deposition had become moot in light of the parties finally reaching agreement as to the final terms of a settlement.  Debonneville's counsel provided no reason for Pierce's counsel to think otherwise.

/ / /

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO SHORTEN NOTICE OF MOTION FOR SANCTIONS

**G.   Debonneville Does Not Request A Deposition Of Pierce As Part Of His Applications For Ex Parte Relief Granted By The Court On April 25, 2008.**

On Friday, April 25, 2008, the parties were ordered to appear for a hearing before this Court regarding the status of the settlement.   At the conclusion of the hearing, Pierce's counsel was informed that Debonneville's counsel had secretly filed, and that the Court was granting, ex parte applications for a temporary restraining order, a temporary protective order and a temporary writ of attachment for purposes of enforcing against Pierce certain terms of the Final Settlement Agreement.   Pierce's counsel was first served with the ex parte applications after they were granted.

The Orders on the temporary restraining order, temporary protective order and writ of attachment were prepared by Debonneville's counsel.   None of these orders required Mr. Pierce to submit to a deposition.   Debonneville did not seek a deposition of Pierce as part of his requested relief.   Rather, he sought declarations from Pierce concerning specific factual issues.   Pierce complied and provided the requested declarations.

**H.   Outside This Court's Presence, Following The April 25, 2008 Hearing, Debonneville's Counsel Verbally Demands That Pierce Appear For His Deposition The Next Business Day.**

Following the hearing before this Court on Friday, April 25, 2008, Debonneville's counsel informed Pierce's counsel in the Court hallway, for the first time, that Debonneville would now be seeking to enforce the  defunct notice of Pierce's deposition, which had been served back on April 14, 2008, before the parties executed the Final Settlement Agreement.   Debonneville's counsel demanded that Pierce appear for his deposition the following Monday, April 28, 2008, as stated in the deposition notice.

Pierce's counsel immediately objected, informing Debonneville's counsel that the demand was improper because the notice of deposition was defunct in light of the subsequent execution of the Final Settlement Agreement and because no deposition was required by the Court orders issued that morning. Pierce's counsel made clear that Pierce would not be appearing for deposition and later that same day served Debonneville's

7

counsel with formal written objections to the improper attempt to suddenly seek enforcement of a defunct deposition notice. *See* Exhibit 12.

## I.   Debonneville Seeks $25,000 In Sanctions Based On Improperly Noticed Ex Parte Applications.

During the evening of April 29, 2008, Debonneville's counsel informed Pierce's counsel by phone that he would be seeking sanctions against Pierce and his counsel for failure to appear for deposition.   Debonneville's counsel did not indicate when or how that motion would be filed.

The next day, Debonneville's counsel filed an Ex Parte Motion for Sanctions against Pierce and his counsel and an Ex Parte Application to Shorten Notice of that motion.  The motion for sanctions seeks $10,000 in sanctions against Pierce, $10,000 in sanctions against Pierce's counsel and $5,000 in attorney fees.  It also seeks an Order requiring Pierce to immediately submit to deposition and to waive all objections to document requests and deposition questions.

Neither ex parte application attaches a declaration from Debonneville's counsel attesting that he informed Pierce's counsel of the deadline for opposing the applications, as is expressly required by this Court's Standing Order  And, in fact, Debonneville's counsel never informed Pierce's counsel of a deadline for responding to the applications, nor did he provide any advance notice of when such applications would be filed.

## III.

## LEGAL ARGUMENT

## A.   The Motion For Sanctions Is Procedurally Defective For Numerous Reasons.

### 1.   The Motion Violates This Court's Standing Order.

This Court's "Order Re Notice to Counsel" (hereafter "Standing Order") sets forth specific requirements a party must comply with when filing an ex parte application. Among other things, the Standing Order requires that the moving papers include a "declaration of notification" which "shall state whether or not the application is opposed" and "if opposed, the declaration shall state that the opposing party was informed that the

opposing party has twenty-four (24) hours from receipt of the papers to file its opposition."

Debonneville's Ex Parte Motion for Sanctions **does not** include any sworn statement that Pierce was informed that he "has twenty-four (24) hours from receipt of the papers to file" his opposition.   In fact, Debonneville's counsel never informed Pierce's counsel of this deadline.   Debonneville's counsel also did not provide any advance notice that he would be seeking sanctions pursuant to an ex parte motion.

### 2.    The Motion Was Filed In Violation Of Local Rule 7-3.

Local Rule 7-3 provides in pertinent part as follows:

> [C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person*, the substance of the contemplated motion and any potential resolution. . . . [T]he conference shall take place at least twenty (20) days prior to the filing of the motion.

Debonneville's counsel made no good faith effort to "discuss thoroughly . . . the substance of the contemplated motion and any potential resolution" prior to filing the Ex Parte Motion for Sanctions.   Rather, he simply mentioned in passing during a telephone call on April 29, 2008 that Debonneville would seek sanctions for failure to appear for deposition. He did not explain when such motion would be filed, what specific sanctions would be sought, or what all the motion would be based upon.

Furthermore, the purported conference did not take place "at least twenty (20) days prior to the filing of the motion."   Rather, Debonneville's counsel informed Pierce's counsel that Debonneville would be seeking sanctions on April 29, 2008 and then filed a motion for sanctions the very next day.

### 3.    The Motion Violates Local Rules 7-6 and 7-7.

Local Rules 7-6 and 7-7 requires that all "[f]actual contentions involved in any motion" be based upon declarations or other proper evidence. Debonneville's motion for sanctions falls woefully short of satisfying this requirement.   The declaration of Debonneville's counsel attached to the motion does not attest to any substantive facts.

9

1    much less any facts that could justify a $25,000 sanction award, and does not properly
2    authenticate any of the exhibits attached thereto.   Accordingly, none of the "factual
3    contentions" upon which Debonneville seeks to rely are supported by proper evidence.

### 4.    The Motion Seeks To Violate Pierce And His Counsel's Constitutional Right To Due Process.

6        It is well settled that due process requires fair notice and a sufficient opportunity to
7    be heard before sanctions can be assessed against a party its counsel.  *Roadway*
8    *Express, inc. v. Piper*, 447 U.S. 752, 767 (1980) ("[S]anctions . . . should not be assessed
9    lightly or without a fair notice and an opportunity for hearing on the record."); *Tom*
10   *Growney Equipment, Inc. v. Sehlley Irr. Dev., Inc.*, 834 F.2d 833, 835-36 (9th Cir. 1987)
11   (holding that due process requires that sanctions not be issued without reasonable notice
12   and an opportunity to be heard); *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507 (9th
13   Cir. 1986) ("Due process . . . requires that parties subject to sanctions have sufficient
14   opportunity to demonstrate that their conduct was not undertaken recklessly or
15   willfully."); *Miranda v. Southern Pacific Transp. Co.*, 710 F. 2d 516, 522-23 (9th Cir.
16   1983) (due process requires opportunity to prepare defense and explain questionable
17   conduct at hearing).

18       Awarding a request for $25,000 in sanctions pursuant to an Ex Parte application, as
19   Debonneville requests the Court to do here, would be inherently unconstitutional.  Neither
20   Pierce nor his counsel have been provided sufficient notice to prepare a thorough
21   opposition.  Rather, they have been provided 24 hours to prepare these papers.  This is an
22   insufficient opportunity to set forth a defense.  At the very least, Pierce and his counsel
23   request the opportunity to fully brief the issues and be heard at oral argument before any
24   sanctions or attorneys' fees are awarded against them.

25   / / /

27   / / /

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO SHORTEN NOTICE OF MOTION FOR SANCTIONS

**B.** **The Motion For Sanctions Is Substantively Defective As Pierce Was Never Required To Appear For Deposition On April 28, 2008.**

**1.** **This Court's April 25, 2008 Orders Did Not Require Pierce To Submit To Deposition.**

None of the Orders issued by this Court on April 25, 2008, which had all been prepared by Debonneville's counsel, required Pierce to appear for deposition on April 28, 2008. Rather, the sole discovery required by these Orders was that Pierce prepare two declarations. Pierce complied with that requirement. These Order provided no basis for also requiring Pierce to submit to a deposition.

**2.** **Conducting Pierce's Deposition On April 28, 2008 Would Have Actually Violated An Express Order Of This Court.**

On January 16, 2008, this Court issued a Scheduling Order which expressly provided that "the Parties **will complete the depositions of the parties** and any third party discovery and depositions **by April 7, 2008.**" (emphasis added). In contravention of this Order, on April 14, 2008, Debonneville served a deposition notice on Pierce seeking to compel him to appear for deposition on April 28, 2008. Debonneville never sought leave of Court to conduct depositions after April 7, 2008, despite being aware of the Scheduling Order at the time he decided to notice Pierce's deposition. Had Pierce appeared for deposition on April 28th without leave of Court, he would have been complicit in Debonneville's attempt to violate the Scheduling Order. Under these circumstances, Pierce's refusal to appear for deposition is certainly not sanctionable.

**3.** **Debonneville Waived His Right To Continue With The Underlying Litigation And Enforce The April 14, 2008 Deposition Notice By Subsequently Executing The Final Settlement Agreement.**

Debonneville served the notice of deposition along with a proposed Second Amended Complaint threatening to continue the underlying litigation due to the parties inability to agree upon the terms of a final written settlement. However, the parties did subsequently agree upon and execute the Final Settlement Agreement on April 17, 2008. Pursuant thereto, Debonneville released and forever discharged Pierce from all known

and unknown claims that Debonneville had or may have had against Pierce as of that date, including all claims asserted in the underlying lawsuit.

By executing the Final Settlement Agreement, Debonneville waived any right to continue prosecuting, and conducting discovery upon, the claims previously asserted against Pierce in the lawsuit. There is no pending cause of action in Debonneville's operative First Amended Complaint on file with the Court that concerns events occurring after April 17, 2008. As such, there is no cause of action presently pending in this action pursuant to which discovery could properly be taken.

### 4. Debonneville's Own Conduct Precludes Him From Arguing That Pierce's Failure To Appear For Deposition On April 28th Was Improper.

Debonneville's argument that Pierce was required to file a motion to quash or motion for protective order to avoid appearing for deposition on April 28, 2008 is belied by Debonneville's own conduct. On February 22, 2008, Pierce served a notice of deposition upon Debonneville requiring him to appear for deposition on March 17, 2008. On March 11, 2008 the parties agreed to settle the lawsuit and executed a Memorandum of Settlement. The notice of Debonneville's deposition was never withdrawn following execution of the Memorandum of Settlement and Debonneville never filed a motion to quash that notice. Nevertheless, Debonneville did not appear for deposition on March 17, 2008.

This is undoubtedly because it was understood by Debonneville that in executing the Memorandum of Settlement the parties agreed to cease prosecuting the underlying litigation. It was not necessary to effectuate this by formally withdrawing all outstanding discovery or by moving to quash any outstanding notices of deposition.

The situation with Pierce's deposition is no different. Debonnellle served notice of Pierce's deposition on April 14, 2008 as part of a threat to continue with the litigation if a final settlement could not be agreed to. Thereafter, a final settlement was agreed to and the parties executed the Final Settlement Agreement. Just as Debonneville had

1  understood that the execution of the Memorandum of Settlement following the noticing of

2  his deposition rendered that deposition notice obsolete, Pierce rightly understood that the

3  execution of the Final Settlement Agreement following the noticing of his deposition had

4  the same effect.

5       Thus, Debonneville's arguments in support of his Motion for Sanctions are

6  contradicted and undermined by his own conduct in this lawsuit.  The assertion that

7  Pierce somehow knew his deposition was still supposed to go forward on April 28, 2008,

8  absent a formal withdrawal of that notice or the filing of a motion to quash, is entirely

9  disingenuous.

10
11
    **5.**    **Debonneville's Election To Seek Specific Enforcement Of The Final Settlement Agreement Precludes Him From Seeking To Continue Prosecuting The Underlying Litigation.**

12       Debonneville has elected to enforce the Final Settlement Agreement by accepting

13  partial performance thereof and by obtaining a writ of attachment to seize Pierce's assets

14  pursuant thereto.  Debonneville is therefore precluded from simultaneously seeking to

15  repudiate the Final Settlement Agreement and continue with discovery in the underlying

16  litigation.  *See Smith v. Golden Eagle Ins. Co.*, 69 Cal. App. 4th 1371, 1375-76 (1999)

17  (holding that party must elect between seeking enforcement of settlement agreement or

18  repudiating settlement agreement and pursuing underlying litigation).

19

20
21
    **6.**    **Debonneville's Ratification Of The Final Settlement Agreement Precludes Him From Seeking To Continue Prosecuting The Underlying Litigation.**

22       By accepting the benefit of Pierce's partial performance of the Final Settlement

23  Agreement and thereafter obtaining a writ of attachment to seize Pierce's assets for

24  purposes of specifically enforcing the Final Settlement Agreement, Debonneville has

25  ratified the Final Settlement Agreement.  He is therefore precluded from continuing with

26  underlying litigation, as it is inconsistent with Debonneville's obligation under the Final

27  Settlement Agreement to release and cease prosecuting all claims in the underlying

28  litigation. See Civil Code 1589 ("A voluntary acceptance of the benefit of a transaction is

13

equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.")

## C. Sanctions Are Warranted Against Both Debonneville And His Counsel For Filing A Frivolous And Vexatious Motion.

Rule 11 of the Federal Rules of Procedure and Local Rule 11-9 both make clear that the presentation to the Court of a frivolous motion may subject the offender to sanctions at the discretion of the Court.  Furthermore, under 28 U.S.C. 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The numerous procedural and substantive defects with Debonneville's Ex Parte Motion for Sanctions set forth above make clear that the pleading is frivolous and was filed "unreasonably and vexatiously" for no purpose other than to burden, harass and intimidate Pierce and his counsel.  An order to show cause why sanctions should not be assessed against Debonneville and his counsel is therefore warranted, as is an order requiring Debonneville and his counsel to reimburse Pierce for the fees and costs incurred because of such misconduct.

## IV.

## CONCLUSION

For the reasons above, Pierce respectfully requests that Debonneville's Ex Parte Motion for Sanctions be denied and that Debonneville and his counsel be ordered to reimburse Pierce for the $4,345 in attorney fees incurred in preparing this opposition.

DATED: May 2, 2008

GREENBERG TRAURIG, LLP

By: _____
Matthew B. Hayes
Attorneys for Brock Pierce

14

# DECLARATION OF MATTHEW B. HAYES, ESQ.

I, Matthew B. Hayes, declare as follows:

1.      I am an attorney admitted to practice before all courts in the State of California, including this Court.  I am an associate at Greenberg Traurig LLP, and along with Diana Scott, a Shareholder of Greenberg Traurig, we are counsel of record for Defendant Brock Pierce ("Pierce") in this matter.  I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.      On January 16, 2008, pursuant to a stipulation between the parties, this Court issued an order referring the case "to Magistrate Judge Nagle for a mandatory settlement conference to be set by Judge Nagle as her calendar permits."  That order further provided that "[i]f the case has not settled after the mandatory settlement conference, the Parties **will complete the depositions of the parties** and any third party discovery and depositions **by April 7, 2008**."  (Hereafter, "Scheduling Order").   A true and correct copy of the Scheduling Order is attached hereto as **Exhibit 1**.

3.      Following the issuance of the Scheduling Order, the parties arranged to participate in a mandatory settlement conference before Judge Nagle in early March 2008.

4.      In advance of the mandatory settlement conference, each party noticed the others deposition to occur in the week following completion of the mandatory settlement conference.   In this regard, on February 22, 2008, Pierce served Plaintiff Alan Debonneville ("Debonneville") with notice that he must appear for deposition on March 17, 2008.  A true and correct copy of that notice is attached hereto as **Exhibit 2**.

5.      On March 10 and 11, 2008, the parties participated in a mandatory settlement conference before Judge Nagle.  At the conclusion of that conference, the parties agreed to enter into a binding agreement to settle the lawsuit and to mutually dismiss one another from any and all claims, known and unknown, existing as of March

11, 2008.  The parties executed a confidential "Memorandum of Settlement" on March 11, 2008 memorializing the parties' agreement to settle the lawsuit and outlining terms of the settlement.  The Memorandum of Settlement explicitly contemplated that the parties would "prepare a more complete written Settlement Agreement and Release."  It further provided that "Any disputed in reaching a more complete written Settlement Agreement will be submitted to Judge Nagle for arbitration and resolution."  However, "[i]n the event that the parties [were] unable to agree upon the language and terms of said Settlement Agreement and Release" the agreement provided that "the terms of this Memorandum of Settlement shall be binding and enforceable . . . ."  The confidential Memorandum of Settlement will be provided to the Court for in camera review on May 5, 2008.

6.     Following execution of the Memorandum of Settlement, Debonneville did not appear for his deposition noticed for March 17, 2008.  He did not file a motion to quash that deposition nor a motion for protective order to excuse his attendance at that deposition.

7.     Following the Mandatory Settlement Conference, the parties began working to prepare a final written settlement agreement as contemplated by the Memorandum of Settlement.  Numerous drafts of the final settlement agreement circulated between the parties and extensive discussions between the parties about proposed terms in the final written settlement agreement.   On April 10th, 2008, Debonneville's counsel began threatening to resume litigation, and to disclose the confidential terms of the Memorandum of Settlement, if the final terms of a written settlement agreement were not immediately reached.  True and correct copies of e-mails exchanged between myself and Debonneville's counsel on April 10th and 11th, 2008 are attached hereto as **Exhibit 3**. Redactions have been made to these e-mails to preserve confidentiality as to the terms of the settlement.

8.     In the midst of making threats to resume limitation, however, Debonneville's counsel also applied to Judge Nagle on April 11, 2008, pursuant to the Memorandum of Settlement, asking her to "arbitrate and resolve the irreconcilable disputes that exist between Debonneville and Pierce in reaching a more complete Settlement Agreement." A true and correct copy of the April 11, 2008 e-mail from Debonneville's counsel to Judge Nagle, which I received via courtesy copy is attached hereto as **Exhibit 4**. Redactions have been made to this e-mail to preserve confidentiality as to the terms of the settlement.

9.     Pursuant to the request by Debonneville's counsel, Judge Nagle asked the parties reappear before her in the last week of April or early May to resolve the remaining disputes.

10.    Pierce's counsel informed the Court and Debonneville's counsel of the dates it was available for such a conference with Judge Nagle.  In doing so, Pierce's counsel objected to Debonneville's counsel's threats to resume the litigation "given the existence of a binding agreement to settle" which both parties had acknowledged. Pierce's counsel made clear it would be happy to "discuss [Debonneville's] demand to resume litigation in the above matter -- including [Debonneville's] request to immediately depose Mr. Pierce and [his] request for leave to amend the complaint -- at the further conference with Judge Nagle." A true and correct copy of an e-mail I sent to Debonneville's counsel on Monday, April 14, 2008 at 9:47 a.m. is attached hereto **Exhibit 5**.

11.    Attached hereto as **Exhibit 6** is a true and correct copy of an e-mail I received from Debonneville's counsel on April 13, 2008 referencing the need to file a "Motion for Leave to Amend Scheduling Order" so that he could resume litigation. No such motion was ever filed.

12.    On April 14, 2008 Debonneville's counsel served a notice of deposition on Pierce, demanding that he appear for deposition on April 28, 2008. Debonneville also served a proposed Second Amended Complaint on Pierce. Attached hereto as **Exhibit 7**

is a true and correct copy of two letters and a notice of deposition I received from Debonneville's counsel on April 14, 2008.

13.   The attempt to notice Pierce's deposition violated this Court's Scheduling Order, which required all depositions to be "complete[d] . . . by April 7, 2008." The attempt to notice the deposition and resume litigation was also in contravention of the Memorandum of Settlement executed by Debonneville, whereby he agreed to release all claims against Pierce in the underlying litigation. Debonneville never sought to repudiate the Memorandum of Settlement.

14.   When Debonneville's counsel sought to resume the litigation and cease further discussions about reaching a final settlement agreement, all constructive communications between the parties collapsed.   Debonneville's counsel resorted to accusing Pierce's counsel of lying, going back on their word and malpractice. This eventually constrained Pierce's counsel to request that "further communications be placed in writing" to avoid any further disputes between counsel about representations allegedly made in telephone calls.   Debonneville's counsel refused to agree to this request, dismissing it as "posturing."  Attached hereto as **Exhibit 8** is a true and correct copy of e-mail correspondence exchanged between myself and Debonneville on April 14, 2008.

15.   The day after Debonneville's counsel noticed Pierce's deposition and served a proposed Second Amended Complaint, I received an e-mail from Debonneville's counsel entitled "Final Offer."  A true and correct copy of that e-mail is attached hereto as **Exhibit 9**.  Attached to this e-mail was a proposed revised draft of the final settlement agreement.

16.   I immediately responded to the offer and devoted the next three days to working to reach a final settlement agreement.  On April 17, 2008, the parties finally reached agreement on terms of the final written settlement agreement.  Attached hereto as **Exhibit 10** are true and correct copies of letter and e-mail correspondence exchanged between myself and Debonneville's counsel between April 15, 2008 and April 17, 2008.

18

17.     Both Debonneville and Pierce executed the "Confidential Settlement Agreement And Mutual Release" (hereafter "Final Settlement Agreement") on April 17, 2008.  A true and correct copy of the executed signature page is attached hereto as **Exhibit 11**.  Pursuant to the Final Settlement Agreement the parties agreed to mutually release one another from any and all known and unknown claims existing as of April 17, 2008, including all claims at issue in the underlying litigation.

18.     Following execution of the Final Settlement Agreement, Pierce's counsel never renoticed Pierce's deposition and did not indicate to our office that the improper deposition notice served on April 14, 2008 was somehow still effective despite the execution of the Final Settlement Agreement.  Our office did not file a motion to quash or motion for protective order because it was clear that the improperly noticed deposition had become moot in light of the parties finally reaching agreement as to the final terms of a settlement. Until the afternoon of April 25, 2008, Debonneville's counsel provided our office no reason to think otherwise.

19.     On Friday, April 25, 2008, the parties were ordered to appear for a hearing before this Court regarding the status of the settlement.  I attended that hearing along with Diana Scott, Esq. and Brock Pierce.  At the conclusion of the hearing, we were informed that Debonneville's counsel had secretly filed, and that the Court was granting, ex parte applications for a temporary restraining order, a temporary protective order and a temporary writ of attachment for purposes of enforcing against Pierce certain terms of the Final Settlement Agreement.  Our office was first served with the ex parte applications after they were granted.

20.     None of the orders issued on April 25, 2008 required Mr. Pierce to submit to a deposition.  Debonneville did not seek a deposition of Pierce as part of his requested relief.  Rather, he sought declarations from Pierce concerning specific factual issues. Pierce complied and provided the requested declarations.

21.     Following the hearing before this Court on Friday, April 25, 2008, Debonneville's counsel informed Ms. Scott and I, for the first time, that Debonneville

19

1 would now be seeking to enforce the defunct notice of Pierce's deposition, which had

2 been served back on April 14, 2008, before the parties executed the Final Settlement

3 Agreement. Debonneville's counsel demanded that Pierce appear for his deposition the

4 following Monday, April 28, 2008, as stated in the deposition notice.

5      22. Both Diana and I immediately objected, informing Debonneville's counsel

6 that the demand was improper because the notice of deposition was defunct in light of the

7 subsequent execution of the Final Settlement Agreement and because no deposition was

8 required by the Court orders issued that morning. Ms. Scott and I made clear that Pierce

9 would not be appearing for deposition. Later that day our office served Debonneville's

10 counsel with formal written objections to the improper attempt to suddenly seek

11 enforcement of a defunct deposition notice. A true and correct copy of those written

12 objections are attached hereto as **Exhibit 12**.

13      23. During the evening of April 29, 2008, I sat in on a telephone conference, via

14 speaker phone, between Debonneville's counsel and Diana Scott. Ms. Scott requested

15 that I sit in on that telephone conference to ensure that there was a witness to the

16 representation made by Mr. Portela and Ms. Scott.

17      24. During the April 29, 2008 telephone conference, Debonneville's counsel

18 stated that he would be seeking sanctions for failure to appear for deposition.

19 Debonneville's counsel did not indicate when or how that motion would be filed.

20      25. During the April 29, 2008 telephone conference Debonneville's counsel also

21 discussed the various forms of relief Debonneville would be seeking at the May 5, 2008

22 hearing. Debonneville's counsel represented that, regardless of whether Pierce satisfied

23 the basis for the temporary protective order, temporary restraining order and writ of

24 attachment, he would be seeking an injunction against Pierce providing for continuing

25 security through December 2008. Debonneville's counsel conceded that the parties had

26 already bargained for certain security in stock to ensure performance of the settlement

27 agreement, but stated that Debonneville was no longer comfortable with the bargained

28 for arrangement. Debonneville's counsel admitted that he may not have a legal basis for

1  obtaining additional security, but indicated he was confident this Court would

2  nevertheless grant his request.

3      26.   During the April 29, 2008 telephone conference, Debonneville's counsel

4  further represented that he would oppose any carve out from the freezing of Pierce's

5  assets to enable Pierce to pay his attorneys' fees, despite the fact that the temporary

6  protective order issued by this Court at Debonneville's request, had expressly required

7  such a carve out.   Again, Debonneville's counsel indicated that he was confident he

8  would prevail as to whatever relief he requested from this Court and concluded the

9  conversation by stating "good luck arguing before Judge Real."

10     27.   Debonneville's counsel never informed our office of a deadline for

11 responding to his ex parte motion for sanctions.

12     28.   I spent 11 hours researching and preparing an opposition to Debonneville's

13 ex parte motion for sanctions against Pierce and our office.   The rate our law firm is

14 charging for my time spent handling this matter is $395 per hour.

15     I declare under penalty of perjury under the laws of the United States of America

16 that the foregoing is true and correct and that this declaration was executed in Santa

17 Monica, California, on May 2, 2008.

18

19                                    MATTHEW B. HAYES

20

21

22

23

24

25

26

27

28

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO SHORTEN NOTICE OF MOTION FOR SANCTIONS

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **2450 Colorado Avenue, Suite 400E, Santa Monica, California 90404.**

On May 2, 2008, I served the **OPPOSITION TO PLAINTIFF ALAN DEBONNEVILLE'S EX PARTE MOTION FOR SANCTIONS; DECLARATION OF MATTHEW B. HAYES, ESQ.** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

SIDLEY AUSTIN LLP
Peter Ostroff, Esq.
555 West Fifth Street
Los Angeles, California 90013
Fax 213.896.6600

THE BECKHAM GROUP P.C.
Blake L. Beckham, Esq.
Jose M. Portela, Esq.
3400 Carlisle, Suite 550
Dallas, Texas 75204
Fax 214.965.9301

☒ **(BY MAIL)**
  ☒   I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Santa Monica, California, in the ordinary course of such business.

☒ **(BY FACSIMILE)**
  ☒   I caused the above mention document(s) to be transmitted by facsimile machine to the number indicated after addresses noted herein.

☒ **(FEDERAL)**   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 2, 2008, at Santa Monica, California.

_____
LOUIS RAMIREZ

**22**

OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR SANCTIONS